UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| PRODUCTIVEMD, LLC, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 3:10-1100 |
| | ) | Judge Sharp |
| 4UMD, LLC, DAVID BECKER, BILL KOTTAS, SR., SCOTT HOLMES and MATT MACINTYRE, | ) | |
| Defendants. | ) | |

### MEMORANDUM

This matter is before the Court on the Motion for Judgment on the Pleadings (Docket No. 44) filed by Defendants 4UMD, LLC, David Becker ("Becker"), Bill Kottas, Sr. ("Kottas"), Scott Holmes ("Holmes"), and Matt MacIntyre ("MacIntyre"). Plaintiff ProductiveMD, LLC has filed a response in opposition to the Motion (Docket No. 49).[1] The Court will grant in part, and deny in part, Defendants' Motion for Judgment on the Pleadings.[2]

### I. FACTUAL BACKGROUND

Because this matter is before the Court on a Motion for Judgment on the Pleadings, the Court accepts the allegations in the Amended Complaint as true. Those allegations are as follows:

ProductiveMD, a Tennessee limited liability company founded in 2003, is in the business

---

[1] In its response, ProductiveMD asserts that, if any of its claim are dismissed, it should be allowed to amend the Amended Complaint. Any such request should be made by separate Motion so that the Magistrate Judge can decide whether amendment should be permitted in light of the Case Management Order, which set an August 3, 2011 deadline for the amendment of pleadings. (Docket No. 37 at 5).

[2] Defendants have also filed a Motion to Ascertain Status (Docket No. 62) which is mooted by this Court's ruling on the Motion for Judgment on the Pleadings.

1

of providing cardiopulmonary exercise testing services. Those services "are premised on evidence-based tests in the fields of cardiac and pulmonary medicine," and marketed primarily to family physicians and internal medicine physicians. (Docket No. 33 at 2 ¶ 10).

4UMD, also a Tennessee limited liability corporation, was founded by Kottas in July 2009. It competes with ProductiveMD by providing "identical cardiopulmonary exercise testing services, primarily to family physicians and internal medicine physicians through evidence-based medicine in the fields of cardiac and pulmonary medicine." (Id. ¶ 11).

ProductiveMD claims that 4UMD's foray into the field of cardiopulmonary exercise testing was not happenstance. Rather, the individual Defendants conspired to, and did, misappropriate ProductiveMD's confidential, proprietary information and business model, and formed 4UMD utilizing that stolen information.

The linchpin of the alleged scheme was Becker, Kottas's son-in-law. Becker was the business development manager for ProductiveMD from October 2007 to June 2009. While so employed, he allegedly misappropriated proprietary information and trade secrets for use in creating 4UMD.

In April 2009, Holmes and MacIntyre approached ProductiveMD's founder, Joel V. Marshall, under the guise that they were interested in purchasing the company. This allegedly was a ruse because their real interest was to gain access to ProductiveMD's financial statements for use in creating 4UMD. After Holmes and MacIntyre rejected Marshall's proposed selling price, Becker continued to work for the company and continued to have access to confidential and proprietary information, including the names of ProductiveMD's clients, and its business operations, product offerings, sales methods, pricing and business forms.

A couple of weeks before Becker resigned from ProductiveMD, he allegedly solicited Laurie Spence ("Spence"), a ProductiveMD technician, to leave ProductiveMD and join 4UMD. Spence did, in fact, join 4UMD. However, prior to leaving Productive MD, Spence compiled a list of the equipment that ProductiveMD used in connection with its business operations, and ProductiveMD believes she gave that information to her new employer.

As indicated, Becker resigned from ProductiveMD in June 2009. He immediately thereafter joined forces with the individual Defendants to get 4UMD up and running.

Since its founding, 4UMD allegedly has used in its business templates, brochures and forms developed by ProductiveMD. ProductiveMD claims that 4UMD copied a large number of its forms, templates and brochures (many of which were registered with the United States Copyright Office), and simply replaced ProductiveMD's logo and/or name with 4UMD's logo and/or name.

4UMD has also allegedly solicited ProductiveMD's customers and prospective customers, and induced customers to leave ProductiveMD for 4UMD. 4UMD has allegedly gone so far as to tell at least one of ProductiveMD's customers that it has "taken over" ProductiveMD's business.

Based on these allegations, ProductiveMD filed an Amended Complaint containing eight counts. Those counts include claims for breach of the duty of loyalty against Becker (Count I); conspiracy to commit unfair competition against Becker, Kottas, Holmes, and McIntyre (Count VII); and copyright infringement against 4UMD (Count III). They also include claims against all Defendants for unfair competition (Count V); intentional interference with business relations (VI); and violations of the Tennessee Uniform Trade Secrets Act (Count II), the Lanham Act (Count IV), and the Tennessee Consumer Protection Act (Count III).

## II. LEGAL DISCUSSION

Defendants move to dismiss all claims, except ProductiveMD's claim for copyright infringement as set forth in Count III; Count V insofar as it alleges unfair competition through the use of copyrighted documents or trademarked material; and Count IV insofar as it alleges that Defendants interfered with ProductiveMD's business by claiming that 4UMD has "taken over" ProductiveMD's business. After setting forth the standard of review, the Court considers the parties' arguments in the order presented by Defendants.

### A. STANDARD OF REVIEW

A Motion for Judgment on the Pleadings under Rule 12(c) of the Federal Rules of Civil Procedure "is appropriately granted 'when no material issue of fact exists and the party is entitled to judgment as a matter of law.'" See, Tucker v. Middleburg-Legacy Place, 539 F.3d 545, 549 (6th Cir. 2008). In making that determination, the Court utilizes the standards applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Id.

In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must take "all well-pleaded material allegations of the pleadings" as true. Fritz v. Charter Township of Comstock, 592 F.3d 718, 722 (6th Cir. 2010). The factual allegations in the Amended Complaint "need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." Id. (quoting Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009)). "'[A] legal conclusion couched as a factual allegation,'" however, "need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient." Id. (quoting Hensley Mfg. v. ProPride, Inc., 579 F.3d 603, 609 (6th Cir. 2009) and Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965

4

(2007)).

**B. COUNT II – VIOLATION OF THE TRADE SECRETS ACT**

In Count II of the Amended Complaint, ProductiveMD alleges Defendants violated Tennessee's Trade Secrets Act ("TUTSA" or "the Act"). Specifically, it is alleged that, while employed by ProductiveMD, "Becker knowingly misappropriated trade secrets of ProductiveMD," and those trade secrets "include, but are not limited to, customer lists, sales strategy and tactics, proprietary information regarding pricing and billing records, methodology for billing codes, knowledge of ProductiveMD's customer needs, ProductiveMD's products and services, as well as knowledge of other forms and procedures used in the business." (Docket No. 33 at 7 ¶ 29). Defendants seek dismissal of this Count on the grounds that it "fails to even mention the essential elements to prove existence of a 'trade secret,' much less allege any facts to support those essential elements," and, "the alleged trade secrets are merely 'remembered information'" which is not protected by the Act. (Docket No. 45 at 4).

Tennessee enacted its version of the Uniform Trade Secrets Act in 2000. See, Tenn. Code Ann. § 47-25-1701. In drafting the TUTSA, "[t]he Tennessee legislature adopted the definition of 'trade secrets' under the Uniform Trade Secrets Act, and also adopted additions which make Tennessee's definition even broader than the definition in the Uniform Act." Hamilton-Ryker Group, LLC v. Kenyon, 2010 WL 323057 at *14 (Tenn. Ct. App. Jan. 28, 2010).

Under the Act,

(4) "Trade secret" means information, without regard to form, including, but not limited to, technical, nontechnical or financial data, a formula, pattern, compilation, program, device, method, technique, process, or plan that:

(A) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by

5

> proper means by other persons who can obtain economic value from its disclosure or use; and
>
> (B) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Tenn. Code Ann. 47-25-1702(4). "Several factors are relevant to determining whether information falls within this statutory definition, including the extent of public knowledge; measures taken to guard its secrecy; the value of the information both to the business and to its competitors; money that was spent to develop the information; and the ease or difficulty with which it could be acquired by outsiders." PartyLite Gifts, Inc. v. Swiss Colony Occasions, 246 Fed. Appx. 969, 973 (6th Cir. 2007). However, "under Tennessee law[,] an employee's 'remembered information' and relationships with customers are not trade secrets." Id. (citing, B & L Corp. v. Thomas & Thorngren, Inc., 162 S.W.3d 189, 215 (Tenn. Ct. App. 2004)).

Defendants first argue ProductiveMD fails to allege any facts which would suggest it took any steps to maintain the secrecy of what it now alleges to be trade secrets and proprietary and confidential information. They contend that '[t]he reasonable step that Plaintiff would have taken if it really thought it had confidential information to be kept secret would have been to require Becker to sign a confidentiality agreement," but "no such agreement or any other precaution is alleged." (Docket No. 45 at 5).

Under the TUTSA, "the elements for a misappropriation of trade secrets claim are: (1) the existence of a trade secret; (2) misappropriation of the trade secret by the defendant; and (3) resulting detriment to the plaintiff." Partylite Gifts, Inc. v. Swiss Colony Occasions, 2006 WL 2370338 at *3 (E.D. Tenn. Aug. 15, 2006) (collecting cases). Defendants cite no cases that indicate a plaintiff must additionally plead the specific efforts it undertook to ensure secrecy. It would be

superfluous to include this as an additional element because, by definition, a trade secret requires reasonable efforts to maintain secrecy. Tenn. Code Ann. § 47-25-1702(4)(b).

At this point, ProductiveMD's task is not to prove its case, but to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1). Indeed, "[s]pecific facts are not necessary; the statement need only 'give the defendant notice of what . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citation omitted).

ProductiveMD fulfills Rule 8(a)'s requirement in relation to its TUTSA claim by identifying the specific things it claims to constitute trade secrets and by alleging that those items were misappropriated by Defendants. This is sufficient to state a claim.[3]

Defendants next argue that "[w]hat Plaintiff lists and claims are trade secrets and confidential and propriety information is nothing more than Becker's 'remembered information,' that he and the other Defendants have every right to freely use." (Docket No. 45 at 4). This arguments fails because the Court has no way of determining from the pleadings what Becker did or did not remember when he went to work for 4UMD.

Prior to concluding its discussion about the TUTSA, the Court addresses an additional provision of the Act which Defendants argue impacts some of ProductiveMD's other claims. The TUTSA contains a preemption provision which, in relevant part, states:

---

[3] If Defendants are correct that a trade secret plaintiff must allege the specific actions it undertook to maintain secrecy, then plaintiff should also have to allege, at a minimum, "the extent of public knowledge," "the value of the information both to the business and to its competitors," the "money that was spent to develop the information," and "the ease or difficulty with which it could be acquired by outsiders," PartyLite, 246 Fed. Appx. at 973, since those factors, too, are part of the calculus used to determine whether an item is a trade secret under the TUTSA. Such comprehensive allegations would go far beyond the "short and plain statement" required by Rule 8(a).

7

a) Except as provided in subsection (b), this part displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret.
(b) This part does not affect:

> \*                    \*                    \*

> (2) Other civil remedies that are not based upon misappropriation of a trade secret . . .

Tenn. Code Ann. § 47-25-1708.

"To date, the Tennessee courts have not had the opportunity to clarify the scope of TUTSA's preemption provision." J.T. Shannon Lumber Co. v. Barrett, 2010 WL 3069818 at *11 (W.D. Tenn. Aug. 4, 2010). However, in a lengthy and well-reasoned analysis, the United State District Court for the Eastern District of Tennessee in Hauck Mfg. Co. v. Astec Indus., Inc., 375 F.Supp.2d 649 (E.D. Tenn. 2004) sought "guidance in case law interpreting and applying the law of the 42 other states which have adopted the UTSA," and concluded:

> In the end, all of these cases turn on their respective factual circumstances as reflected by the plaintiff's pleadings. In fact, in several instances courts have stated the law in divergent manners but proceeded to apply those seemingly contrary standards in similar, if not identical, fashion. There are two primary dangers to be avoided in formulating a rule in this area. First, the law should seek to avoid the confusion, inefficiency, and inconsistency which the UTSA and the various state legislatures to have adopted it initially sought to eliminate in the first place. Pure misappropriation of a trade secret should not expose an individual or entity to differing levels of liability across the 43 states which have adopted the UTSA, nor should courts be called upon to analyze the same set of operative facts repeatedly under numerous standards of liability. Second, courts should be wary of the possibility of duplicative recoveries for the same injury. Even though a plaintiff might be able (or even required) to prove additional facts in support of alternative claims, he or she would not be entitled to multiple recoveries if the only measurable damages resulted from the trade secret misappropriation. Even if there are multiple wrongs, there can be only one recovery.

> In light of these considerations, perhaps a better formulation of the UTSA preemption standard would be a "same proof" standard under which a claim will be preempted when it necessarily rises or falls based on whether the defendant is found

to have "misappropriated" a "trade secret" as those two terms are defined in the UTSA. Stated another way, if proof of a non-UTSA claim would also simultaneously establish a claim for misappropriation of trade secrets, it is preempted irrespective of whatever surplus elements or proof were necessary to establish it. . . . The UTSA defines "misappropriation" broadly enough to cover a wide range of conduct, including the sort of conduct contemplated by the various claims which are often involved in preemption disputes. If a proven claim, whether in whole or in part, constitutes misappropriation of trade secret, it is that and that alone.

Id. at 655 & 657-58 (internal citation and footnote omitted).

Hauck's "'same proof' standard" has found favor in this district, see, Cardinal Health 414, Inc. v. Adams, 582 F.Supp.2d 967, 984-86 (M.D. Tenn. 2008) and in the Sixth Circuit, see, PartyLite Gifts, 246 Fed. Appx. at 973. Indeed, base upon "the well-reasoned Hauck decision, and the absence of any contrary authority from the Tennessee courts," the Sixth Circuit in PartyLite Gifts held "the district court reasonably concluded [plaintiff's unfair competition and tortious interference] claims were pre-empted." Id.

ProductiveMD has offered no arguments in opposition to the "same proof" test formulated in Hauck. The Court will apply that test because it is reasonably likely that, if presented with the issue, Tennessee courts would apply the "same proof" test in determining whether claims are preempted by the TUTSA. See, J.T. Shannon Lumber Co., 2010 WL 3069818 at *11 ("the Court agrees with the Eastern District of Tennessee that if confronted with the issue of TUTSA preemption, Tennessee courts would apply the 'same proof' test").

## C. COUNT I – BREACH OF DUTY OF LOYALTY

In Count I, ProductiveMD alleges Becker "breached his fiduciary duty of loyalty by acting adverse to ProductiveMD" in any of a number of ways. (Docket Entry No. 33 at 6 ¶ 25). Defendants first move to dismiss on the grounds that Becker owed ProductiveMD no fiduciary duty.

In support of their position, Defendants cite Weiss v. Laboratory Corp. of America Holdings,

9

2007 WL 4365764 at *13 (M.D. Tenn. 2007) for the proposition that only officers and directors of a corporation owe a fiduciary duty to the corporation and its members. Defendants posit that since Becker is not alleged to have been an officer or director of ProductiveMD, the breach of duty of loyalty claim should be dismissed.

Although Count I repeatedly uses the term "fiduciary duty," it is captioned as a claim for "breach of the duty of loyalty by Becker," that is the essence of the claim, and it is clear that "[a]n employee 'must act solely for the benefit of the employer in matters within the scope of his employment'" and "'must not engage in conduct that is adverse to the employer's interests.'" Efird v. Clinic of Plastic and Reconstructive Surgery, P.A., 147 S.W.3d 208, 220 (Tenn. Ct. App. 2003) (citation omitted). The Court will not dismiss this Count merely because ProductiveMD calls the duty a "fiduciary duty," since, on at least two occasions, the Tennessee Court of Appeals in Efird characterized the duty as "an employee's fiduciary duty of loyalty." Id.

Defendants next argue "the allegations in Count I are that Becker was simply preparing to compete with Plaintiff," and "[p]reparing to compete with one's employer is not an actionable tort." (Docket No. 45 at 8-9).

It is true that "an employee does not breach a duty of loyalty to his employer by making preparations to compete while still employed, for instance by filing a corporate charter for a new competing company." Int'l Sec. Mgmt Group, Inc. v. Sawyer, 2006 WL 1638537 at *11 (M.D. Tenn. June 6, 2006). "He may also, while still employed, inform current or potential clients of the company that he intends to leave and what his future plans are without breaching any duty of loyalty." Id.

ProductiveMD's allegations go far beyond mere preparation to compete. When the

allegations and the inferences to be drawn from them are construed in ProductiveMD's favor, they suggest that Becker took ProductiveMD's material for later use and solicited an employee while still employed by ProductiveMD. These actions suggest "more than mere mistaken judgment or negligence," and "intentional, destructive acts completed explicitly for the employee's own self-interests in direct violation of competition with the interests of the employer." Booth v. Fred's Inc., 2003 WL 21998410 at *13 (Tenn. Ct. App. Aug. 19, 2003).

That said, it is clear some of what ProductiveMD characterizes as breaches of the duty of loyalty are preempted by the TUTSA. Under the "same proof" test, a claim is preempted "when it necessarily rises or falls based on whether the defendant is <u>found</u> to have 'misappropriated' a 'trade secret.'" Hauck, 375 F.Supp. at 658 (emphasis added). In this regard, ProductiveMD's allegations that "Becker breached his fiduciary duty of loyalty . . . <u>by misappropriating trade secrets</u>," and that he conspired with the other Defendants "to use ProductiveMD's trade secrets" (Docket No. 33 at 6, ¶¶ 25 & 26)(emphasis added) are preempted by the TUTSA and will be dismissed.

## D. COUNT IV – LANHAM ACT CLAIM

In moving to dismiss the Lanham Act claim, Defendants argue:

Count IV does not allege "misuse" of any trademark. Count IV does not even allege a trademark that it owns. Therefore, Count IV fails to state a claim upon which relief can be granted and must be dismissed.

(Docket No. 45 at 10). ProductiveMD's failure to identify ownership of a trademark is not fatal to its Lanham Act claim.

"The Lanham Act was intended to make actionable the deceptive and misleading use of marks and to protect persons engaged in . . . commerce against unfair competition." Two Pesos,

11

Inc. v. Taco Cabana, Inc., 505 U.S. 763, 767–68 (1992) (internal citation marks omitted). It "offers protection against infringement of both registered and unregistered marks." DeGidio v. Westgroup Corp., 355 F.3d 506, 509 (6th Cir. 2004).

"While much of the Lanham Act addresses the registration, use, and infringement of trademarks and related marks, § 43(a), 15 U.S.C. § 1125(a) is one of the few provisions that goes beyond trademark protection." Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 28–29 (2003). In relevant part, that section provides:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which–
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person,
>
>       *                    *                    *
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

In this case, ProductiveMD's Lanham Act claim is brought under Section 43(a).[4] To establish a Lanham Act claim under this section, a plaintiff must show "'(1) that the defendant made material false or misleading representations of fact in connection with the . . . promotion of its product; (2) in commerce; (3) that are either likely to cause confusion or mistake as to (a) the origin,

---

[4] ProductiveMD asserts that its "stated cause of action under the Lanham Act is a 'passing off' claim arising under Section 1125(a)[.]" (Docket Entry No. 49 at 10). "Passing off (or palming off, as it is sometimes called) occurs when a producer misrepresents his own goods or services as someone else's." Dastar, 539 U.S. at 27 n.1. "'Reverse passing off,' as its name implies, is the opposite: The producer misrepresents someone else's goods or services as his own." Id.

12

association or approval of the product with or by another, or (b) the characteristics of the goods or services; and (4) injure the plaintiff.'" La Resolana Architects, PA v. Reno, Inc., 555 F.3d 1171, 1181 (10th Cir. 2009) (citation omitted); Parker v. Google, Inc., 242 Fed. Appx 833, 838 (3rd Cir. 2007) (listing similar element).

Here, ProductiveMD alleges "Defendants passed off 4UMD's services as being those of ProductiveMD by communicating that 4UMD had taken over ProductiveMD's business and by copying and using business forms and other materials that were misappropriated from ProductiveMD." (Docket No. 33 at 8 ¶ 35). This is sufficient to establish a plausible claim that Defendants used "any word, term, name, symbol, or device, or any combination thereof, or . . . any false or misleading description of fact, or false or misleading representation of fact" which was "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person" as required by 15 U.S.C. § 1125(a).

As Defendants point out, some cases have indicated that an essential element of a Section 43(a) Lanham Act claim is that there be the misuse of a registered mark. However, given Dastar and the statutory language, this seems to be an overstatement of the elements of a Section 43(a) claim.

"After Dastar, . . . courts have followed the Supreme Court's directive that Section 43(a) may be applied to situations in which a registered trademark is not involved. Zyla v. Wadsworth, Div. of Thomson Corp., 360 F.3d 243, 251 (1st Cir. 2004) (stating that the 'existence of a trademark is not a necessary prerequisite to a § 43(a) action'); Empresa Cubana del Tabaco v. Culbro Corp., 399 F.3d 462, 478 (2nd Cir. 2005) (stating that Section 43(a) includes causes of action grounded in allegations of false or misleading description of fact and false or misleading representation of fact); Gnesys, Inc. v. Greene, 437 F.3d 482, 488-89 (6th Cir. 2005) (stating that Section 43(a) concerns

13

false representation by those engaged in commerce, and is clearly not limited to trademark issues).", Schlotzsky's, Ltd. v. Sterling Purchasing and Nat. Distribution Co., Inc., 520 F.3d 393, 399 (5th Cir. 2008); see also, Famous Horse, Inc. v. 5th Ave. Photo, Inc., 624 F.3d 106, 110 (2nd Cir. 2010) (citation omitted) ( Section 43(a) "mak[es] certain types of unfair competition federal statutory torts, whether or not they involve infringement of a registered trademark"). This is in keeping with the broad language of the statute which, as the Sixth Circuit observed in Gnesys, 437 F.3d at 489, "it is not limited to trademark issues." Thus, "[t]he Lanham Act does not require a plaintiff to plead that it owns a trademark to state a claim for a violation of 15 U.S.C. § 1125(a)," Marci's Fun Food, LLC v. Shearer's Foods, Inc., 2010 WL 3982290 at *5 (W.D. Pa. Oct. 8, 2010).

E. COUNT V – UNFAIR COMPETITION

Defendants move to dismiss Count V of the Amended Complaint insofar as it is based upon the alleged misappropriation and use of trade secrets. For the reasons already explained, the Court will dismiss ProductiveMD's unfair competition claim to the extent that it is based upon the alleged theft and use of trade secrets because of the preemption provision of the TUTSA.

Defendants also move to dismiss Count V because "ProductiveMD does not allege ownership, or misuse, of a trademark." (Docket No. 45 at 12). However, the Court has already determined that ownership of a trademark is not an essential element of a claim under Section 43(a) of the Lanham Act.

F. COUNT VI – INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONS

In Count VI, ProductiveMD claims all Defendants intentionally interfered with ProductiveMD's business relations. In relevant part, ProductiveMD alleges:

14

41. ProductiveMD had existing business relationships with its physician clients.

42. Defendant had specific knowledge of ProductiveMD's client relationships.

43. Defendants have specifically targeted ProductiveMD's clients with the intent to convince those clients to end their business relationship with ProductiveMD. As a result, at least one client has ended its business relationship with ProductiveMD.

44. Defendants have used improper means to interfere with these business relationships by, among other actionable activities, misrepresenting to clients that 4UMD had taken over ProductiveMD's business.

(Docket No. 33 at 9 ¶¶ 41-44). Defendants move to dismiss because, in paragraphs 42 and 43, ProductiveMD claims that Becker had "specific knowledge of ProductiveMD's client relationship" and the "overarching allegation is that Defendants used confidential and proprietary client information." (Docket No. 45 at 12).

The Court does not read paragraphs 42 and 43 as necessarily being grounded on the use of trade secrets because, as Defendants themselves have pointed out, an employee's "remembered information and relationships with customers are not a trade secret," PartyLite, 246 Fed. Appx. at 973, although use of that information may amount to the intentional interference with business relationship. See, Vincit Enter. Inc. v. Zimmerman, 2006 WL 1319515 at *7 (M.D. Tenn. May 12, 2006) (for purpose of intentional interference claim, "[t]he solicitation of customers is not related to trade secrets").

Further, the allegation that "Defendant had specific knowledge of Productive MD's client relationships" is nothing more than the recitation of an essential element of an intentional interference claim. See, Trau-Med, 71 S.W.3d at 701 (second element of intentional interference claim is knowledge of existing business relationship "and not a mere awareness of the plaintiff's business dealings with others in general"). Defendants are not entitled to judgment as a matter of

15

law on this claim.

## G. COUNT VII – CIVIL CONSPIRACY

In Count VII, ProductiveMD alleges Defendants "conspired to misappropriate ProductiveMD's trade secrets and other valuable confidential and proprietary information for the purpose of having 4UMD unfairly compete with ProductiveMD and that they are using "this information to gain an improper competitive advantage over ProductiveMD." (Docket No. 33 at 9-10 ¶ 46). The Court agrees with Defendants that, as presently alleged, this claim is preempted by the TUTSA.

Under Tennessee law, "[c]ivil conspiracy requires an underlying predicate tort allegedly committed pursuant to the conspiracy." Watson's Carpet and Floor Coverings, Inc. v. McCormick, 247 S.W.3d 169, 180 (Tenn. Ct. App. 2007). By its very allegations, the civil conspiracy claim is specifically linked to the alleged theft of trade secrets, and "necessarily rises or falls based on whether the defendant is found to have 'misappropriated' a 'trade secret[.]'" Hauck, 375 F.Supp at 658. Accordingly, Count VII will be dismissed.

## H. COUNT VIII – TENNESSEE CONSUMER PROTECTION ACT ("TCPA") CLAIM

Defendants move to dismiss Count VIII of the Amended Complaint on the grounds that it does not adequately plead a TCPA claim. The Court disagrees.

To state a claim under the TCPA a plaintiff must show (1) the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA, and (2) the defendant's conduct caused an "ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated[.]" Tenn. Code Ann. § 47-18-109(a). Contrary to Defendants' contention, ProductiveMD sufficiently alleges unfair or deceptive acts.

16

Leaving aside that the TCPA contains a "catch-all" provision which prohibits "any other act or practice which is deceptive to the consumer or any other person," Tenn. Code Ann. § 47-18-104(b)(27), certain specific actions are declared by the TCPA to be "deceptive acts or practices." These include, but are not limited to, "[f]alsely passing off goods or services as those of another," "[c]ausing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services," and "[c]ausing likelihood of confusion or misunderstanding as to affiliation, connection or association with . . . another[.]" Tenn. Code Ann. 47-18-105(b)(1) - (3).

The Amended Complaint contains allegations that 4UMD falsely passed off its goods or services as those of ProductiveMD, and that, in doing so, 4UMD likely caused misunderstanding or confusion as to the source or sponsorship of cardiopulmonary testing services, and/misunderstanding or confusion as to its affiliation or connection with ProductiveMD. These allegations are sufficient to state a claim under the TCPA. Count VIII will not be dismissed on the pleadings.

### III. CONCLUSION

On the basis of the foregoing, the Court will enter an Order which grants in part and denies in part Defendants' Motion for Judgment on the Pleadings. Specifically, the Motion will be granted as to ProductiveMD's Civil Conspiracy claim as set forth in Count VII. The Motion will also be granted insofar as ProductiveMD alleges in Count I that Becker breached his duty of loyalty by misappropriating and conspiring with the other Defendants to misappropriate trade secrets, and insofar as ProductiveMD alleges in Count V that Defendants engaged in unfair competition by misappropriating and using trade secrets. With those ruling, Defendants' Motion to Ascertain Status

17

(Docket No. 62) is rendered moot.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE